FRANK E. JANDT ET AL. V. LUCIEN DERANLEAU.

FILED JANUARY 19, 1899.   No. 8601.

1. Action on Attachment Bond: ISSUES: BURDEN OF PROOF. In an action on attachment bond, where the averments of the petition are put in issue by the answer, the burden is upon the plaintiff to establish that the writ was wrongfully obtained; in other words, that the ground stated in the affidavit for attachment did not exist. Following *Storz v. Finklestein*, 48 Neb. 27.

2. ———: ———: EVIDENCE. In an action on an attachment bond the defendants who undertake to make proof of facts justifying a resort to attachment should be permitted to introduce testimony relevant to that issue.

3. ———: ———. Where, in an action on an attachment bond because of an alleged wrongful suing out of the attachment, plaintiff had made no effort to prove the allegation and the court had refused to admit proofs contradictory thereof when offered by defendants, *held*, erroneous to submit that issue as one of fact to be determined by the jury.

ERROR from the district court of Dawes county. Tried below before BARTOW, J. *Reversed.*

*E. W. Dailey* and *Allen G. Fisher*, for plaintiffs in error.

*W. H. Fanning, Alvin T. Clark*, and *Albert W. Crites*, contra.

RYAN, C.

This action was brought in the district court of Dawes county for the recovery of damages which it was alleged Lucien Deranleau has sustained by the wrongful suing out of an attachment against, and the levy thereof upon and appropriation of, certain of his property, consisting of cattle, calves, and a horse. George P. Waller and William E. Alexander were joined as defendants because it was alleged that they were sureties on the attachment undertaking. The answer contained a denial, in conjunction with certain affirmative matters of defense, which we shall now describe.

36

To establish his cause of action Deranleau, among other matters of evidence, introduced the affidavit for the attachment, by which it was disclosed that the ground upon which the attachment was obtained was: "That the defendant is about to remove his property, or a part thereof, with intent to defraud his creditors." This omitted the statutory requirement of the words "out of the jurisdiction of the court," but as this defect was not presented by the motion to dissolve the attachment we shall likewise ignore it. The motion to dissolve the attachment was based on seven distinct grounds, some of which were technical in their nature. This motion was sustained, and in this suit on the bond the proof of the alleged wrongful suing out of the attachment consisted in the introduction in evidence of the order dissolving the attachment, together with the record which led up to its issuance. There was no evidence whatever offered on behalf of Deranleau as to whether or not he was about to remove his property with intent to defraud his creditors when the attachment issued against him. On the other hand, the defendant undertook to show the contemplation of a fraudulent disposition of his property on Deranleau's part such as would justify the issuance of an attachment, and the success of this effort we shall now indicate.

Being asked to state what the circumstances were which led to his swearing out and issuing of the order of attachment Mr. Jandt said: "Mr. Deranleau was owing me a bill of $505.91, besides a mortgage." At this point there was sustained a motion to strike out this testimony because the amount of the bill was immaterial. There was an exception to this ruling, a part of the proceedings which we shall not hereafter note, for heretofore we had never dreamed in our philosophy of the number of objections, motions to strike, and exceptions which, with industry, might be crowded into an average-sized record. Mr. Jandt further testified that he gave Deranleau consent to remove some horses, upon which Jandt had a

chattel mortgage, to Custer county, South Dakota, and that Deranleau, without Jandt's consent, removed these horses on into Wisconsin; that Deranleau paid this mortgage when Jandt threatened to go after him if he did not; that Deranleau, though he acknowledged the correctness of the bill, refused to pay it, and said he would not pay it until he had made money enough to free himself again. Mr. Jandt also testified that he kept on writing to Deranleau, but could get no satisfactory answer from him, and when he found he could do nothing he went to his attorney about it and talked with him in regard to the stock of Deranleau in Nebraska that was being disposed of, and he and his attorney looked it up and his attorney advised him to get out an attachment. On motion there was stricken out from the last answer what the attorney said about it, after which ruling the witness said he thereupon sued out the attachment and attached the property in controversy. At this time, the witness said, there was part of this stock offered for sale by George Le Blanc, a brother-in-law of Deranleau, as his own stock and not that of Deranleau. The witness was then asked: "Where was Deranleau when you attached the stock?" To this question there was sustained the objection that it was incompetent, irrelevant, immaterial, and not set up in the answer, and not pleaded. When objection was thus made there was a tender of proof by an answer to the question, if it should be permitted to be made, that the absence of Deranleau was a part of the fraudulent conduct, he causing his property to be disposed of by others in his absence and placing himself beyond convenient communication with plaintiff, his creditor at the time. A like objection was sustained to the tender of proof. This witness further testified that Le Blanc had the stock in charge, and that there were a few little things out there at the place (presumably Deranleau's former home), but he had moved away the furniture and stove. Upon explaining further, in answer to another question, that what little furniture

Deranleau had taken to his place he took away when his mother left in the fall and she went to Hersey, Wisconsin, where Deranleau was, this evidence as to where his mother went and where he was was stricken out on motion, because, as objected, these facts had not been pleaded and set up in the affidavit for an attachment. On objection Mr. Jandt was prevented from answering as to the condition of Deranleau's place when the attachment was sued out, and as to whether any farming had been done thereon that season, where Deranleau's cattle were. There were also sustained objections of the nature of those above indicated when questions were asked Jandt as to his making demand for payment and his attempts to obtain a settlement. He did, however, in this connection testify that Deranleau wrote him several letters, but this general statement was, on motion, stricken out because it was held incompetent, irrelevant, and immaterial. In like manner was treated Mr. Jandt's statement that he wrote several letters making propositions in answer to the letters of Deranleau. An objection was sustained to a question as to whether the place of Deranleau had been his former home. In answer to another question Mr. Jandt said that there was nothing at Deranleau's place but the cattle that was worth a dollar. Plaintiff moved to strike this out as not stating any facts, whereupon the court said: "The last part of it may go out." When asked if the cattle had any brand on them, Mr. Jandt said they did,—the letters L. D. Whereupon he was asked if Le Blanc put any counter-brand on those he sold when he sold them. This was objected to, for the reasons that it was incompetent, irrelevant, and immaterial, and because it had not been alleged in the affidavit that Deranleau had disposed of, or was about to dispose of, this property. The objection was sustained, the court remarking that it was immaterial. There was propounded to the witness this question: "Did Mr. Le Blanc claim to have the property and be the agent for Mr. Deranleau in handling and control-

ling these cattle and offering them for sale and disposing of them? Objected to, as incompetent, irrelevant, and immaterial, and has no tendency to prove an agency." This objection was sustained.

The above history of the attempt to show that there was justification for resorting to an attachment has been necessitated by the protracted efforts which were made in that direction. From this history it is very clear that Deranleau was owing the bill claimed, but this fact was excluded from the jury's consideration. He had removed, practically, all his property from the state, except his cattle, and these his brother-in-law was selling as his own. Jandt was not permitted to show attempts to procure a settlement of his bill, nor even where Deranleau was residing while a correspondence was held with him to procure such a settlement. His evidence of a consultation with an attorney as to the necessity of resorting to attachment was excluded, as was also the fact that certain mortgaged property which Deranleau had permission to. remove to South Dakota he had taken to Wisconsin. Under these conditions the court gave the following instruction: "The plaintiff has introduced evidence showing that by an order of the district court of this county the order of attachment in question was discharged and the attached property ordered returned to the plaintiff herein, and it was contended by counsel that this order was conclusive on the question of the wrongful issuance of the order of attachment; but as the record in evidence fails to show the grounds upon which the order discharging the attachment was made, many reasons therefor having been assigned, the court has seen fit, under the amendment allowed to the answer during this trial, to submit to the jury all the facts and circumstances immediately attending the issuance and levy of the writ and the disposition made of the attached property, and so leave to your determination the question whether the issue and levy of the attachment was wrongful."

As we have already shown, the defendants in the district court were not permitted to disclose facts from which the jury might properly have determined whether or not the attachment was wrongfully sued out and levied. After the exclusion of this evidence, upon consideration of which the jury might have formed a judgment as to whether or not there was a wrongful issuance of the attachment, that question, as one of fact, was submitted for the jury to determine. In *Storz v. Finklestein*, 48 Neb. 27, it was said: "In an action on an attachment bond, where the averments of the petition are put in issue by the answer, the burden is upon the plaintiff to establish that the writ was wrongfully obtained; in other words, that the ground stated in the affidavit for attachment did not exist or was untrue. In case there is a failure to prove such fact the suit must fail. It is not enough that it be shown that the attachment was dissolved, since the writ may have been discharged for omission or irregularities merely. It must further appear that the attachment was wrongfully issued; that is, no valid grounds existed for granting the writ. This is the rule stated by LAKE, C. J., in *Eaton v. Bartscherer*, 5 Neb., 469." From this discussion it must be evident that there were at least three errors during the progress of this trial: First, in requiring no proof on plaintiff's part to establish the wrongful suing out of the attachment except the order dissolving it; second, the defendant having assumed to disprove the wrongful suing out of the attachment, it was erroneous to exclude proper evidence having that tendency; and, third, having excluded the evidence tending to show sufficient grounds for an attachment, it was improper to submit that question to the jury. Because of these errors the judgment of the district court is reversed and the cause is remanded for further proceedings.

REVERSED AND REMANDED.